## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **CYNTHIA A. BENSON,** | : | **Bankruptcy No.  03-34318 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | : | |
| **JAMES R. WALSH, ESQ., TRUSTEE,** | : | |
| | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Related To Doc. Nos. 10, 60,** |
| | : | **and 78** |
| **CYNTHIA A. BENSON** | : | |
| | : | |
| **Respondent** | : | |

**and**

IN RE:

| | | |
|---|---|---|
| **ALAN DAVID McMURRY,** | : | **Bankruptcy No. 05-29822BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | : | |
| **JAMES R. WALSH, ESQ., TRUSTEE,** | : | |
| | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Related To Doc. Nos. 12, 22,** |
| | : | **and 36** |
| **ALAN DAVID McMURRY,** | : | |
| | : | |
| **Respondent** | : | |

## MEMORANDUM OPINION

The district court has remanded these matters for further proceedings.  The district court concluded that this court erred as a matter of law in sustaining objections by the chapter 7 trustee to exemptions debtors had taken in portions of their respective individual retirement accounts (IRAs) in accordance with § 522(d)(10)(E) of the Bankruptcy Code.

After conducting evidentiary hearings as directed by the district court, we again sustain the objections by the chapter 7 trustee to debtors' exemptions.  For reasons set forth below, debtors' exemptions will be disallowed to the extent they are based on § 522(d)(10)(E).

## — FACTS —

### Debtor Cynthia Benson:  Bankruptcy No. 03-34318BM

Debtor Cynthia Benson has been employed by Family Eye & Vision Care for approximately twenty-one years.[1]  Several years after she began her employment, debtor's employer established a tax-qualified 401(k) retirement plan for its employees into which it made periodic contributions on their behalf. Neither debtor nor any other any other employee contributed to the plan.

Her employer terminated the 401(k) plan in June of 2001 and replaced it with an employer-funded IRA into which the funds in the 401(k) plan were rolled.  Debtor's

---

[1] Debtor also was employed by a nearby township as secretary on a part-time basis in the year 2003. She voluntarily terminated this job at the end of the year 2003. Since then she has not sought part-time employment to supplement her income from her employment by Family Eye & Vision Care.

employer has continued making periodic contributions to the IRA to the present time. It contributed $2,500 per year to her IRA in the years 2003, 2004 and 2005. Debtor has testified that she does not expect her employer to cease making such contributions in future years for as long as she remains employed by it. As was the case with the above 401(k) plan, debtor does not contribute to her IRA.

A brochure entitled "Employee Information Booklet" given to debtor by her employer states that the funds in the IRA belong to her. It also states that while debtor may withdraw funds from her IRA at any time, such withdrawals are taxable income for that tax year. The brochure also states that any withdrawal debtor makes before she is 59 ½ years old is subject to a ten percent tax penalty unless the withdrawal falls within the scope of certain specified exceptions such as, for instance, disability.

Debtor filed a voluntary chapter 7 petition on November 14, 2003. She was forty-eight years old at the time and presently is fifty-one. A chapter 7 trustee was appointed shortly thereafter.

Debtor has a daughter from a prior marriage who was eighteen years old when debtor filed her chapter 7 petition. The daughter now is twenty-one years old and no longer is debtor's dependent.

Schedules accompanying debtor's bankruptcy petition listed assets with a total declared value of $40,001.00 and liabilities, all of which are owed to general unsecured creditors, totaling $55,143.37. Included among the assets identified on the schedules was debtor's interest in the above IRA. It was listed as having a value of $25,506.00

- 3 -

at that time.   Elsewhere in the schedules, debtor claimed that the entire IRA was excluded from her bankruptcy estate by § 541(c)(2) of the Bankruptcy Code.

According to her bankruptcy schedules, debtor's monthly net income as of the petition date was $1,956.28, while her monthly expenses totaled $1,845.00.  Wages in the amount of $442.65 from her part-time employment as a secretary were included in her monthly gross income.  As we noted previously, debtor voluntarily terminated this employment at the end of the year 2003.

The chapter 7 trustee filed a timely objection to debtor's contention that her IRA was entirely excluded from the bankruptcy estate by § 541(c)(2).  He requested an order directing debtor to turn the IRA over to him for distribution to her creditors.

Before the objection could be heard and decided, Debtor amended her schedules.  She exempted $3,350.00 of the IRA in accordance with § 522(d)(5) of the Bankruptcy Code and claimed that the remaining $22,156.00 was excluded from the bankruptcy estate by § 541(c)(2).

The chapter 7 trustee did not object to the exemption of a portion of the IRA in accordance with § 522(d)(5); he did, however, continue to object to debtor's contention that the remaining portion of her IRA  fell within the scope of § 541(c)(2) and thus was excluded from the bankruptcy estate.  The trustee again maintained that this remaining portion of the IRA was property of the bankruptcy estate and should be made available for distribution to debtor's creditors.

Some eight months after receiving a discharge and before the trustee's objection was tried, debtor again amended her schedules with respect to the IRA. In addition to claiming the above § 522(d)(5) exemption and asserting that the remaining portion of it was excluded from the bankruptcy estate by § 541(c)(2), debtor exempted the remaining $22,156.00 of the IRA in accordance with § 522(d)(10)(E) of the Bankruptcy Code.

The chapter 7 trustee responded by again conceding that debtor's § 522(d)(5) exemption in the amount of $3,350.00, the so-called "wild card" provision, was allowable. He also again objected to debtor's contention that the remaining $22,156.00 was excluded from the bankruptcy estate by virtue of § 541(c)(2) and objected to debtor's exemption of the remainder of the IRA in accordance with § 522(d)(10)(E).

According to the chapter 7 trustee, the remaining portion of the IRA was not exemptible in accordance with § 522(d)(10)(E) because, as of the commencement of her bankruptcy case, debtor was not receiving any payment from the IRA on account of illness, disability, death, age or length of service. As authority for his objection, the trustee relied on the holding of *Clark v. O'Neill (In re Clark)*, 711 F.2d 21 (3d Cir. 1983).

At a hearing on the trustee's objection to debtor's second amended exemption of her IRA, debtor and the chapter 7 trustee agreed that there was no need for this court to hear testimony before deciding the matter. They stipulated that the trustee's objection could be decided on a case-stated basis.

We thereafter sustained the trustee's objection in an unpublished memorandum opinion and order. Among other things, we determined that no portion of debtor's IRA was excluded from her bankruptcy estate by § 541(c)(2) of the Bankruptcy Code. We further determined that *In re Clark* applied and that debtor consequently could not exempt any portion of her IRA in accordance with § 522(d)(10)(E) because she was not receiving any distributions from it when she commenced her bankruptcy case. The recent decision in *Rousey v. Jacoway*, 554 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005), we concluded, had not addressed the issue decided in *In re Clark* and consequently had not overruled it, either directly or by implication.

Dissatisfied with our order sustaining the trustee's objection, debtor appealed it to the District Court.

In its memorandum opinion and order, the district court agreed that § 541(c)(2) did not apply and therefore did not exclude any portion of debtor's IRA from her bankruptcy estate. It further determined, however, that *In re Clark* was inconsistent with *Rousey* and by implication had been overruled by *Rousey*. According to the district court, whether debtor had a right to receive payments from her IRA when she filed her bankruptcy petition was "irrelevant" when determining whether debtor's exemption of the remaining portion of her IRA pursuant to § 522(d)(10)(E) was allowable. The district court then remanded the matter to this court for further proceedings to determine whether, as required by the language of § 522(d)(10)(E), the remaining

portion of debtor's IRA was "reasonably necessary" for her support and support of her dependents.

An evidentiary hearing was held pursuant to the instruction of the district court. The matter is now ready for decision.  In the event debtor's legal position is ultimately sustained, she will exit bankruptcy with all of her debts discharged and once again own all of her assets.  Debtor's creditors, who unquestionably provided goods and services to debtor based upon her promises to pay for same, will receive nothing.

### *Debtor Alan D. McMurry:  Bankruptcy No. 05-29882BM*

Debtor Alan D. McMurry filed a voluntary chapter 7 petition on July 29, 2005. A chapter 7 trustee was appointed a few days later.  Debtor was fifty-five years old when he filed the petition and presently is fifty-six.

The schedules attached to the petition listed assets with a total declared value of $35,398.17 and liabilities totaling $75,532.20.  All but $3,474.80 of the listed debt is owed to pre-petition general unsecured creditors.

The major asset listed on the schedules was an IRA with a declared value of $22,938.17 as of the petition date.  Debtor has not made any contributions to the IRA since the petition date and, according to his federal income tax return for the year 2005, withdrew $7,000 from it in the year 2005 prior to July 29, 2005.  In the schedules, debtor took an exemption in the entire IRA according to § 522(d)(10)(E) of the Bankruptcy Code.

According to debtor's statement of financial affairs, his gross income was $138,377.16 in the year 2003 and was $149,827.56 in the year 2004. His gross income for the year 2005 before he filed his chapter 7 petition was $37,417.91.

Debtor has been employed on a full-time basis since July of 2006 as director of engineering for a corporation and continues in this employment to the present. His salary in this job is $100,000 per year.

Other schedules filed with the petition indicated that debtor's monthly gross income in July of 2005 was $6,083.33 while his monthly net income was $4,302.78. His monthly expenses at that time were said to total $4,685.00, which exceeded his monthly net income by $382.22.

Debtor has a son and a daughter, apparently from a prior marriage. His son was eighteen at the time of the bankruptcy filing and is now nineteen years old and in college. His daughter was twelve at that time and is now fourteen years old.

The single largest expense listed on the schedules was $1,400.00 per month in child support for his son and daughter. In addition, debtor spent $300.00 per month to provide medical insurance for them.

Before the deadline for objecting to the exemption debtor had taken in his IRA had passed, debtor amended his exemptions and claimed an exemption in his IRA in the amount of $8,708.00 pursuant to § 522(d)(5) of the Bankruptcy Code and exempted the remaining $14,230.17 pursuant to § 522(d)(10)(E).

In his timely response to the amended exemptions, the chapter 7 trustee conceded that the exemption in the amount of $8,708.00 debtor had taken according to § 522(d)(5) was allowable.  He objected, however, to the exemption debtor had taken pursuant to § 522(d)(10)(E) in the remaining $14,230.17 of his IRA.  The trustee asserted that debtor's § 522(d)(10)(E) exemption should be disallowed because debtor had not begun receiving payments from the IRA  when he filed his bankruptcy petition. As he had done in *In re Benson*, the trustee relied on the holding articulated in *Clark v. O'Neill (In re Clark)*, 711 F.2d 21 (3d Cir. 1983), as authority for his objection.

After hearing oral argument on the objection, we concluded that *In re Clark* applied and that debtor could not exempt any portion of his IRA pursuant to § 522(d)(10)(E) because he was not receiving distributions from the IRA when he commenced his bankruptcy case.  We further concluded that *Rousey v. Jacoway*, 554 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d (2005), had not addressed the issue presented in *In re Clark* and did not overrule it, either directly or by implication.

Debtor then appealed our order to the district court.  The appeal was assigned to the same judge as had decided the appeal in *In re Benson*.

In its memorandum opinion and order, the district court once again held that *In re Clark* was inconsistent with and by implication had been overruled by *Rousey*. According to the district court, whether debtor was receiving distributions from his IRA when he filed his chapter 7 petition was "irrelevant" when determining whether debtor's exemption of the remaining portion of his IRA pursuant to § 522(d)(10)(E) was

allowable.  The district court then remanded the matter for further proceedings to determine whether, as required by § 522(d)(10)(E), the remaining portion of debtor's IRA  was "reasonably necessary" for the support of debtor and his dependents.

An evidentiary hearing was held as directed by the district court.  The matter is now ready for decision.  As was the case with Cynthia Benson, if debtor's legal position is correct, he will reap the benefit of his assets while leaving his creditors with nothing.

## – ANALYSIS –

Section 522 of the Bankruptcy Code provides in relevant part as follows:

(d) The following property may be exempted under subsection (b)(1) of this section:...
> (10) The debtor's right to receive --- ....
>> (E) a payment under a stock bonus, pension, profitsharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependents of the debtor.

11 U.S.C. § 522(d)(10)(E).

To qualify for such an exemption, both debtors' IRAs must satisfy the following requirements: (1) the right to receive payment is "from a stock bonus, pension, profitsharing, annuity or similar plan or contract"; (2) the right to receive payment is "on account of illness, disability, death, age or length of service"; and (3) the right to receive payment is exemptible only "to the extent" it is "reasonably necessary" to support the debtor and his or her dependents. *Rousey*, 544 U.S. at 325-26, 125 S.Ct. at 1566.

The issue before the court in *Rousey* was whether the IRAs of the debtors in that case satisfied the first and second of these requirements. *Id.*, 544 U.S. at 326, 125 S. Ct. at 1566. The third requirement was not at issue and therefore was not addressed by the Supreme Court.

Substituting the phrase "because of" for the phrase "on account of" appearing in § 522(d)(10)(E), the Supreme Court concluded, for reasons that need not detain us, that the right of the Rouseys to receive payments from their IRAs was "on account of" their illness, disability, death, *age*, or length of service. *Id.*, 544 U.S. at 327-29. 125 S.Ct. at 1566-68. The second of the above requirements, in other words, was satisfied with respect to the Rouseys IRAs.

Engaging in an "ordinary language analysis", the Supreme Court then reasoned that for something to be a "similar plan" within the meaning of § 522(d)(10) (E), it has to be "like, though not identical to, the enumerated plans or contracts" and "must share characteristics common to the listed plans or contracts". *Id.*   Applying these principles to the IRAs of the Rouseys, the Supreme Court concluded that their IRAs were "similar to" the types of plans or contracts enumerated in § 522(d)(10)(E). *Id.* Like the plans or contracts listed therein, the Rouseys' IRAs were substitutes for wages and were not mere savings accounts. *Id.*, 544 U.S. at 329, 125 S.Ct. at 1568. Their IRAs, in other words, also satisfied the first of the above-mentioned requirements.

After concluding that the Rouseys IRAs satisfied the first two of the above requirements, the Supreme Court then reversed and remanded the matter *without* considering the third requirement.

In contrast to *Rousey*, the Third Circuit in *In re Clark* specifically addressed and decided the third requirement in a case involving a debtor's Keogh plan which he had exempted pursuant to § 522(d)(10)(E).

Relying on legislative history, the Third Circuit concluded that § 522(d)(10)(E) applied to the debtor's Keogh plan, but only with respect to *present* payments and to the extent they were "reasonably necessary" for the support of the debtor and his dependents. *In re Clark*, 711 F.2d at 23.   Section 522(d)(10)(E) did not apply to a right to receive payments which first arose *after the commencement of the bankruptcy case*. *Id*.  According to the Third Circuit, if a debtor's right to receive payments from a Keogh plan arises for the first time after the petition date, the right to receive such payments is *not* "reasonably necessary" for the support of a debtor and his or her dependents and is *not* exemptible under § 522(d)(10)(E).

Before beginning our analysis of the above debtors' exemptions, it perhaps should be noted that another member of the district court recently affirmed a decision of ours in another case involving § 522(d)(10)(E).  The judge in that case concluded that Rousey did not overrule *In re Clark*.  *Walsh v. Reott*, 2006WL1428306, * 2 (W.D. Pa. 2006).  Still another member of the district court also has arrived at the same conclusion. *Skiba v. Auman*, 2006WL278153, * 3-4 (W.D. Pa. 2006).

This disagreement is not confined to the district court. The same is true of bankruptcy courts in this district. At least one other member of this court has arrived at the same conclusion as we did. *Andrzejewski v. Skiba (In re Andrzejewski)*, 337 B.R. 835, 836 (Bankr. W.D. Pa. 2006). Another member of this court, however, has arrived at the opposite conclusion. *Cardiello v. Seaton (In re Seaton)*, 346 B.R. 389, 392-93 (Bankr. W.D. Pa. 2006).

One final observation seems appropriate before we begin analyzing the above debtors' claimed exemptions. Setting aside for the moment whether *In re Clark* is inconsistent with *Rousey* – we do not believe that it is --, *In re Clark* remains *stare decisis* in the Third Circuit with respect to the issue presented in these cases.

Over the twenty plus years at this trial court level, we have encountered cases wherein we felt that a superior appellate court – i.e., U.S. Supreme Court – had overruled an appellate court – i.e., the Third Circuit Court of Appeals – by indirect means and/or implication. In those instances, we deemed it appropriate to tread lightly with the thought that it would be wise to avoid "mind reading" with respect to a superior appellate court. If the precedent is to be reversed it would be proper to leave said action to a court having authority to do so.

We were convinced that this procedure was wise in the case at hand as the Supreme Court had specifically identified the issues to be decided in <u>Rousey</u>.[2] The Supreme Court expressly, and not by implication, set forth the issues it would not decide.

In the same vein, the Third Circuit expressly, and not by implication, decided that the right to receive payment is exemptible only if the debtor had a present right as of the filing of the bankruptcy petition.

Having said this, we will obey the mandate of the district court and determine, without regard for the holding of *In re Clark,* whether debtors' right to receive payments from their respective IRAs is "reasonably necessary" for their support and the support of their dependents.

An exemption claimed in property is presumptively valid.  The exemption shall be allowed "unless a party in interest objects". 11 U.S.C. § 522(l).

Once an exemption is claimed, the objecting party has the burden of proving that the exemption is improper. *Federal Rule of Bankruptcy Procedure* 4003(c).  The objector has the initial burden of producing evidence to rebut the presumptive validity of the objection. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999).  If the objector does so, the burden of production then shifts to the debtor to

---

[2.] To qualify for such an exemption, both debtors' IRAs must satisfy the following requirements: (1) the right to receive payment is "from a stock bonus, pension, profit sharing, annuity or similar plan or contract"; (2) the right to receive payment is "on account of illness, disability, death, age or length of service".  The right to receive payment is exemptible only "to the extent" that it is "reasonably necessary" to support the debtor and his or her dependents. *Rousey*,  544 U.S. at 325-26, 125 S.Ct. at 1566.

- 14 -

produce evidence showing that the exemption is proper. *Id.* Although the burden of production shifts in this manner, the ultimate burden of persuasion does not. The objector must prove by a preponderance of the evidence that the exemption is not proper. *Jenkins v. Hodes (In re Hodes)*, 402 F.3d 1005, 1010 (10th Cir. 2005).

### Debtor Cynthia Benson:  Bankruptcy No. 03-34318BM

Debtor came forward at the hearing with evidence in the form of four scenarios designed to show that her § 522(d)(10)(E) exemption should be allowed because it is "reasonably necessary" for the support of herself and her present husband.

Scenario (1) projects what debtor's total monthly income will be if she retires when she is sixty-two and begins receiving social security payments at that time and retains the "full value" of her IRA. She then compares that amount to her projected monthly expenses at that age. Her husband's projected monthly income at that time and his projected monthly expenses are *not included* in the comparison.

According to scenario (1), debtor's projected monthly income when she is sixty-two will total $1,300.65 while her projected monthly expenses will total $1,845.00, which exceeds her projected monthly income by $544.35. In projecting what her monthly income will be at that time, debtor assumes that she will retire at age sixty-two, will receive $899.00 per month in social security payments and $401.00 per month from her IRA if she retains its "full value" and begins drawing it down at that time.

Scenario (2) projects what debtor's total monthly income will be if she retires at age sixty-two and begins receiving social security payments at that time and retains

only the "reduced value" of her IRA.  She then compares that amount to her projected monthly expenses at that time.  As in scenario (1), her husband's projected monthly income at that time and his projected monthly are *not included* in scenario (2).

According to scenario (2), debtor's projected monthly income when she is sixty-two will total $1,078.13 while her projected monthly expenses will, as in scenario (1), total $1,845.00, which exceeds her projected monthly income by $766.87.  In projecting how much her monthly income will be at that time, debtor again assumes that she will retire at age sixty-two, will receive $899.00 per month in social security payments and will receive $179.13 per month if she retains only the "reduced value" of the IRA and begins drawing it down at that time.

Scenario (3) projects what debtor's total monthly income will be if she retires when she is sixty-two and begins receiving social security payments at that time and retains the "full value" of her IRA.  She then compares that total to her projected monthly expenses at that time.  Her husband's projected monthly income at that time and his projected monthly expenses *are included* in the comparison.

According to scenario (3), the projected combined monthly income of debtor and her husband when she is sixty-two will total $4,645.92 while their projected combined monthly expenses will total $4,818,62, which exceeds their projected monthly income by $172.70.  In projecting what their combined monthly income will be at that time, debtor again assumes that she will  retire at age sixty-two, will receive $899.00 per month in social security payments, will receive $401.00 per month from her IRA if

she retains its "full value" and begins drawing it down at that time.  Her husband's projected monthly net income when debtor is sixty-two is $3,345.27.

Scenario (4) projects what debtor's total monthly income will be when she is sixty-two and begins receiving social security payments at that time and retains only the "reduced value" of her IRA.  She then compares that projected total with her projected monthly expenses at that time.   As was the case in scenario (3), her husband's projected net monthly income at that time as well as his projected monthly expenses *are included* in the comparison.

According to scenario (4), the projected combined monthly income of debtor and her husband when she is sixty-two will total $4,243.40 while their projected combined monthly expenses will total $4,818.62, which exceeds their projected monthly income by $575.22.  In projecting what their combined monthly income will be at that time, debtor again assumes that she will retire at age sixty-two, will receive $899.00 per monthly in social security payments and will receive only $179.13 if she receives only the "reduced value" of the IRA and begins drawing down then.

In each of the four scenarios, debtor projects that her (and her husband's) total monthly expenses will exceed by varying amounts her (and her husband's) projected total monthly expenses at specified times.   Debtor attempted by this to show that the exemption she has taken in the right to receive payments from her IRA is "reasonably necessary" for purposes of § 522(d)(10)(E) and therefore is allowable.

We conclude for reasons set forth below that it is more likely than not that the exemption debtor has taken in the election to receive payments from her IRA pursuant to § 522(d)(10)(E) is *not* "reasonably necessary" for the support of debtor (and her husband). Testimony elicited from debtor on cross-examination establishes that debtor's (and her husband's) anticipated monthly income when debtor retires will be considerably *greater* than debtor has projected. It also establishes that when the projected monthly expenses of debtor's husband are included in scenarios (3) and (4), their projected monthly expenses are appreciably *less* than debtor would have us believe.

Each of the scenarios, it was noted, is based on the assumption that debtor will retire in eleven years from now when she is sixty-two years old. As support for this assumption, debtor testified that she suffers from various physical ailments. Debtor testified that: she had surgery in the year 2002 to fuse spinal discs but still experiences back pain; she had surgery in the year 2006 to repair the carpal tunnel in her right wrist and will have the same kind of surgery in the year 2007 on her left wrist; and she has hyperthyroidism which she treats with prescription medicine. When cross-examined by the chapter 7 trustee, however, debtor conceded that she does not expect to have to retire at age sixty-two on account of her health.

At first blush it might appear to be folly, if not arrogant, for this court to say when would be an appropriate time for one to retire from gainful employment. While this perhaps would be true in most instances, the circumstances presented in this instance require us to forego such a *laissez-faire* approach. Debtor has decided that her creditors, who provided goods and services based on a promise by debtor that she will pay them, should get nothing in this case and have to go away empty-handed. Fairness and equity require us to scrutinize debtor's retirement plans more closely than we would if she proposed leaving a portion of her IRA for distribution to her creditors.

Barring something unforeseen (and unforeseeable), there is no good reason to expect that debtor will not be able to continue to work, either for her present employer or for another employer, beyond the age of sixty-two. Many individuals with the sorts of physical problems about which debtor testified continue to work well beyond the age of sixty-two.

This has significant ramifications for debtor's projections in the above scenarios concerning what her projected income will be when she retires and begins receiving social security payments.

In projecting in each of the scenarios that she will receive $899.00 per month in social security payments, debtor relied on a statement prepared in August of 2006 by the Social Security Administration projecting that debtor will receive that amount when she is sixty-two. Debtor's reliance on this statement in constructing the above scenarios is flawed in various respects.

If the amounts in the statement accurately indicate how much debtor will receive in monthly social security payments at specified ages, it projects that debtor will receive $1,215.00 per month when she is sixty-six and will receive $1,587.00 when she is seventy. These amounts respectively are $316.00 and $688.00 greater than the amount debtor is projected to receive when she is sixty-two, the age she selected in constructing all of the above scenarios. Debtor's reason for selecting the projected amount she will receive at age sixty-two is obvious. Doing so minimized her projected income in all four scenarios, thereby maximizing the likelihood that the portion of her IRA she claimed as exempt according to § 522(d)(10)(E) will be "reasonably necessary" for her support and the support of her dependents.

The problems with debtor's reliance on the statement provided by the Social Security Administration do not end there. The amounts debtor is projected to receive at various ages *under*estimate how much debtor is likely to receive per month at various ages.

The amounts projected by the Social Security Administration do not take into account cost-of-living adjustments (COLAs) recipients are likely to receive in future years. While it cannot be said categorically that such adjustments will continue to be made in the future, it is reasonable to expect that they will.

Moreover, while it obviously is not possible to say precisely how much these COLAs will amount to in the aggregate by the time debtor retires, it is reasonable to expect that the increase in her monthly payments over the long haul will be significant.

- 20 -

By the time debtor reaches sixty-two *in eleven years*, for instance, it is likely that she would receive several hundreds of dollars more than $899.00 per month.  By the time she is sixty-six *in fifteen years*, it is likely she will receive several hundreds of dollars more than $1,215.00 per month.  The same can be said with respect to the payment totaling $1,587.00 debtor presently is projected to receive when she turns seventy *in nineteen years*.

Taking all of this into consideration in evaluating the four scenarios presented by debtor, we conclude that the amount of social security payments debtor can be expected to receive when she retires should be sufficient to enable debtor to support herself (and her husband).[3]

The shortcomings of the scenarios debtor presented are not limited to the amount of social security payments debtor projects she will receive per month at various ages.  Similar problems arise with respect to the monthly amount debtor projects she will be able to withdraw from her IRA when she retires.  Debtor has grossly *under*stated in each scenario the amount she will be able to withdraw from her IRA.

Debtor projected in scenarios (1) and (3) that if she retains the "full value" of her IRA, she will be able to withdraw $401.00 per month from it when she is sixty-two.  Debtor projected in scenarios (2) and (4) that if she retains just the "reduced value" of

---

[4.] It also should be noted that nothing would prohibit debtor from continuing to work even *after* she elects to begin receiving monthly social security payments. She could, for instance, elect to begin receiving such payments at, say, age sixty-six while also working and earning income from her employment. Were she to do so, the income from her employment would be in addition to her social security payments and would further increase her total monthly income. Debtor assumes in each of the scenarios that once she begins receiving social security payments, she will no longer continue her employment. The two are not necessarily exclusive.

her IRA, she will be able to withdraw only $179.13 per month from it when she is sixty-two.

No explanation was provided by debtor for how she arrived at these projected amounts. They appear, however, to be based on charts prepared by a financial planner who, for some unknown reason, did not testify at the evidentiary hearing. Even though the charts without his testimony would seem to be hearsay, the chapter 7 trustee did not object to debtor's quest to offer the charts into evidence.

Setting this problem aside, the initial problem we have in making sense of the charts is that it is not clear what the difference is between the "full value" and the "reduced value" of debtor's IRA.

According to the chart pertaining to "full value", debtor's IRA had a "beginning value" of $46,407.93 on November 2, 2006, and had a "reduced value" of $22,156.72 on September 2, 2003, some two months before the petition date. The significance of these different dates is not clear. Without some explanation from the individual who prepared the charts, we do not know what the difference is between "full value" and "reduced value" and can only speculate as to what the difference is.

Other problems arise with respect to the amounts debtor projects she will be able to withdraw from her IRA when she retires.

We have determined that there is no compelling reason to assume that debtor will have to stop working at age sixty-two rather than at age sixty-six or age seventy. It is just as likely, we indicated, that debtor will be able to continue working until she

is sixty-six or seventy because her health will force her to stop working when she is sixty-two.

The charts upon which debtor relied in constructing scenarios (1) and (3) indicate that debtor will be able to withdraw $531.15 per month from her IRA beginning at age sixty-six and $699.91 per month at age seventy if she retains its "full value" and begins making withdrawals at either of those ages.  These amounts respectively are $130.15 and $198.91 greater than the amount debtor projects she would receive in scenarios (1) and (3) if she retains the "full value" of her IRA and begins withdrawing funds from it when she is sixty-two.  Her monthly income would increase accordingly.

Similar problems exist with respect to the charts debtor relied upon in constructing scenarios (2) and (4).  Debtor claims in these scenarios that she will be able to withdraw just $179.13 per month from her IRA if she retains only its "reduced value" and begins making withdrawals from it when she is sixty-two.[4]  That same chart indicates, however, that debtor would be able to withdraw $293.87 per month if she waits until she is sixty-six to retire and $383.92 per month if she waits until age seventy.  These amounts respectively are $114.74 and $204.79 greater than the amounts debtor projects she would receive in scenarios (2) and (4) if she retains only the "reduced

_____

[4.]  One of the charts prepared by the financial expert indicated that debtor would be able to withdraw $222.22 per month if she retained only the "reduced value" of the IRA and began making withdrawals at age sixty-two. For some unexplained reason, debtor projected in scenarios (2) and (4) that she would be able to withdraw only $179.13 per month. While this discrepancy is puzzling, it is of no consequence in light of the determination that there is no good reason to expect that debtor will *have* to begin making withdrawals from the IRA when she is sixty-two.

- 23 -

value" of the IRA and begins withdrawing funds from its when she is sixty-two.  Her monthly income would increase accordingly.

There are other serious problems with the charts prepared by the financial planner upon which debtor relied in preparing each of the above scenarios.

For instance, the charts prepared by the financial planner fail to take into account whether debtor's present employer will continue to contribute approximately $2,500.00 per year to her IRAs, as it had done for each of the past several years. Debtor conceded at the evidentiary hearing that she had no reason to expect her employer to discontinue making such contributions to her IRA for each future year she remains employed by it.

If debtor continues working for her present employer until she reaches sixty-two in *eleven* years and it is assumed that the employer will continue making similar annual contributions to debtor's IRA until then, the employer will have contributed an additional $27,500.00 to the IRA by then ($2,500.00 x  11 = $27,500.00).  If debtor continues working for another *fifteen* years until she is sixty-six, her employer will have contributed an additional $37,5000.00 to her IRA  ($2,500.00 x 15 = $37,500.00).  If debtor continues working for another *nineteen* years until she is seventy, her employer will have contributed an additional $47,500.00 to her IRA ($2,500.00 x 19 = $47,500.00).  Assuming that these additional contributions will realize a positive rate of return, these amounts will be significantly greater than the amounts contributed.

One final flaw is worth noting with respect to the scenarios debtor presented in support of her § 522(d)(10)(E) exemption.  In addition to grossly *under*stating her projected income in the scenarios, debtor has greatly *over*stated in scenarios (3) and (4) how much her and her husband's combined expenses will be.

Debtor projects in scenarios (3) and (4) that their combined monthly expenses when she is sixty-two in eleven years will total $4,818.61.  Included among the expenses is $450.00 per month debtor's husband pays in child support pursuant to a court order for his daughter by a prior marriage.

Inclusion of this amount as an expense debtor and her husband will have in eleven (or more) years from the present is inappropriate.  Debtor conceded on cross-examination that her husband's child support obligation will terminate in June of 2007, some ten years before debtor turns sixty-two.  This particular item should *not* have been included in their projected joint expenses some eleven (or more) years from the present.  Debtor conceded on cross-examination that the termination of her husband's support obligation in June of 2007 will increase the amount they can set aside for when they retire.

We conclude in light of the foregoing that it is considerably more likely than not that the portion of her IRA debtor seeks to exempt pursuant to § 522(d)(10)(E) is *not* "reasonably necessary" for her support and the support of her husband.  The objection of the chapter 7 trustee to this particular exemption consequently will be sustained and the exemption will be disallowed.

### *Debtor Alan D. McMurry:  Bankruptcy No. 05-29882BM*

Except for his bankruptcy schedules, of which he asked the court to take judicial notice, debtor Alan McMurry offered no evidence at the evidentiary hearing showing that the exemption he has taken in the right to receive payments from his IRA pursuant to § 522(d)(10)(E) is "reasonably necessary" for his and his dependents' support.  His counsel asserted that we should consider only his financial situation on the date of the filing of his bankruptcy petition to determine whether the exemption is allowable.  We understand debtor to mean by this that any changes in his financial situation occurring after the petition date are not relevant to determining the allowability of his exemption.

According to debtor's bankruptcy schedules, his monthly net income as of the petition date totaled $4,302.78 while his monthly expenses totaled $4,685.00, which is $382.22 more than his monthly net income.  If debtor is correct in maintaining that we may consider his financial situation only as of the petition date, it might indeed follow that the exemption at issue is allowable.

The approach debtor advocates is overly simplistic.  The question we have been mandated to answer requires us to assess debtor's future needs.  Consideration of debtor's financial situation in this instance is not necessarily restricted to what it was on the petition date.  Post-petition changes in his financial situation also may inform our decision.

We have stated in other cases that the allowability of a § 522(d)(10)(E) exemption is to be determined as of the petition date. *Walsh v. Helsel (In re Helsel),*

326 B.R. 591, 602 (Bankr. W.D. Pa. 2005)(citing *Canfield v. Orso (In re Orso)*, 283 F.3d

686, 691-92 (5th Cir. 2002)); also *Dean v. Telegadis (In re Dean)*, 317 B.R. 482, 487

(Bankr. W.D. Pa. 2004).

We do not, however, consider this to be a *per se* rule which has no exception

in every conceivable situation.  A bankruptcy court *may* consider events occurring *after*

the petition date when circumstances so require.[5]  Nothing in the language or structure

of the Bankruptcy Code of which we are aware *requires* us to limit our inquiry as debtor

would have us do.

The purpose of exemptions provided for by the Bankruptcy Code is to provide

a debtor with a "fresh start".  *In re Clark*, 711 F.2d at 23.  More precisely, their:

> ... historical purpose ... has been to protect a debtor from his creditors,
> to provide him with the basic necessities of life so that even if his
> creditors levy on all of his nonexempt property, the debtor will not be
> left destitute and a public charge.

*Id.* (quoting H.R. Rep. No. 595, 195th Cong, 1st. Sess. 126 (1977), reprinted in 1978

U.S. Code Cong. & Ad. News, 5787, 5963, 6087).

Even if, as the district court concluded, *Rousey* overruled *In re Clark*, we do not

read *Rousey* as invalidating this particular statement by the Third Circuit concerning the

purpose of exemptions in bankruptcy.  In our estimation, the above statement by the

Third Circuit concerning the purpose of exemptions in bankruptcy remains good law.

Although such exemptions in most instances may be necessary to provide a

debtor with a "fresh start", they are not intended to provide a debtor with a windfall.

---

[5] This especially true when, as here, the challenged exemption consists of a projected stream
of income over a period of time stretching into the future.

*In re Lebovitz*, 344 B.R. 556, 561 (Bankr. W.D. Tenn. 2006).  If allowing a § 522(d)(10)
(E) exemption would confer a windfall on a debtor, it should  be *dis*allowed.

To summarize, if events occurring after the petition date establish that a § 522
(d)(10)(E) exemption is not necessary to enable a debtor to avoid becoming destitute
and hence a public charge, the exemption is *not* required for a "fresh start" and is *not*
"reasonably necessary" within the meaning of § 522(d)(10)(E).  An objection to such
an exemption should be sustained.

Applying this principle to the portion of the IRA debtor seeks to exempt
pursuant to § 522(d)(10)(E), we conclude that said portion is *not* "reasonably
necessary" for the support of debtor and his dependents.  The chapter 7 trustee's
objection to the exemption should be sustained.

Debtor's bankruptcy schedules indicate that his monthly gross income as of the
petition date was $6,083.33 and that his monthly net income was $4,302.78.  A total
of $1,780.55 was deducted from his gross monthly income for "payroll taxes and social
security".  No other income or deductions from his monthly gross were listed on the
schedules.

In response to interrogatories served upon him by the chapter 7 trustee in
anticipation of the above evidentiary hearing, debtor indicated that his annual salary
had increased to $100,000.00 in July of 2006 when he found new employment.
Debtor's monthly gross income had increased to $8,333.33 ($100,000.00 ÷ 12 =

$8,333.33), which is $2,250.00 more than his monthly gross income was on the petition date ($8,333.33 - $6,083.33 = $2,250.00).

Debtor also indicated in his answer to the above interrogatory that the deductions from his present paycheck, which is issued weekly, total $548.22 per week. These deductions were for federal income tax withholding ($376.49), Medicare ($27.50), social security ($117.57), dental insurance ($5.57) and medical insurance ($21.09) ($376.49 + $27.50 + $117.57 + $5.57 + $.27.50 = $548.22).

After annualizing these weekly deductions and then dividing that total by twelve, it emerges that they total $2,375.62 per month and that debtor's monthly net income is $5,957.71 ($8,333.33 - $2,375.62 = $5,957.71).

In addition to requesting the above information from debtor in his interrogatories, the trustee also requested information from debtor concerning his present monthly expenses.  With one notable exception, debtor provided neither the requested information nor documents evidencing those expenses.  The lone exception was child support, which debtor identified in his answer to another interrogatory posed by the trustee.  According to debtor, he presently pays child support in the amount of $1,200.00 per month.

This does not square with what debtor indicated in listing his monthly expenses in the schedules accompanying his bankruptcy petition.  Debtor indicated in the schedules that he had two children who were eighteen and twelve years old, respectively, as of the petition date.  According to the schedules, debtor spent

- 29 -

$1,400.00 per month in child support for his two children and another $300.00 per month for their medical insurance. These expenses come to $1,700.00 per month.

Debtor stated in his answer to an interrogatory from the chapter 7 trustee that his older child presently is nineteen years old and attends college while his younger child presently is fourteen. It is reasonable to infer from this that debtor is no longer obligated to provide support for the older child and to pay for his medical insurance. If we halve the amount of child support and medical insurance listed in the bankruptcy schedules that debtor remains obligated to pay for the younger child, we would expect him to presently pay $850.00 instead of $1,200.00 per month.

If, however, we nevertheless accept as true debtor's assertion that he presently pays child support in the amount of $1,200.00 per month for one child, it follows that $4,757.71 ($5,957.51 - $1,200.00 = $4,757.71) of debtor's present monthly gross monthly income remains with which to pay his remaining – but unidentified – living expenses.

According to debtor's bankruptcy schedules, the remainder of his monthly expenses when he filed his bankruptcy petition in July of 2005 totaled $2,985.00 per month.

Because debtor did not appear at the evidentiary hearing, the chapter 7 trustee was not able to inquire how much his other remaining monthly living expenses are at the present time. As a result, debtor produced nothing indicating what the total of his

other living expenses are at present.[6]   He did *not*, in other words, come forward with evidence tending to show that his § 522(d)(10)(E) exemption taken in his IRA is *presently* "reasonably necessary" for his support and the support of his dependents.

Even if we assume that debtor's present remaining monthly expenses have increased by as much as twenty percent since the petition date,[7] these present remaining expenses amount to $3,582.00 ($2,985.00 + 20% = $3,582.00) per month. Adding this amount to what debtor claimed he presently pays for child support, it follows that his present monthly expenses total $4,782.00 ($1,200.00 + $3582.00 = $4,782.00).   Subtracting this total from debtor's monthly net income after payroll deductions are accounted for leaves debtor with *surplus inc*ome in the amount of $1,175.21 per month ($5,957.21 - $4,782.00 = $1,175.21).

It follows from the foregoing that the portion of the IRA debtor has exempted in accordance with § 522(d)(10)(E) is *not* "reasonably necessary" for the *present* support of debtor and his dependents.   To allow the exemption would confer a windfall upon debtor and thus would conflict with the above-stated purpose of exemptions in bankruptcy.

---

[6.] Because debtor did not answer the trustee's interrogatory concerning such information and did not appear to be cross-examined about them, we construe the lack of evidence about this as inuring to the detriment of debtor, not the chapter 7 trustee.

[7.]  It is unlikely that his other expenses have increased by this much in the eighteen months since the petition date. We err on the side of caution in assuming such a high percentage rate of increase.

Our analysis does not end there.  We conclude not only that debtor's present monthly net income exceeds his monthly expenses; we further conclude that this situation is more or less static and should continue *into the foreseeable future*.

Debtor presently is fifty-six years old. In response to one of the trustee's interrogatories, debtor conceded that he has no health conditions or physical or mental limitations that would limit his income or ability to be employed *beyond* the age of sixty-two.

Also, debtor's younger child for whom he presently pays $1,200.00 per month in child support will turn eighteen less than four years from now.  It thus can be expected that debtor's obligation to pay child support also will terminate in approximately four years when she turns eighteen.  Assuming that debtor's monthly net income and other monthly expenses remain unchanged, his surplus monthly income will increase at that time to $2,375.21 ($1,175.21 + $1,200.00 = $ 2,375.21).

It follows from these considerations that the portion of the IRA debtor exempted in accordance with § 522(d)(10)(E) also will not be necessary for debtor's support *four years from now*.

The matter does not end there.

In light of debtor's concession that he knows of nothing that would prevent him from working past age sixty-two or that would limit his ability to earn a living, it is reasonable to expect that he will continue to work for more than another six years, if not onger.

Assuming that debtor's net income and expenses remain constant, that he will have surplus monthly income in the amount of $1,175.21 over the next four years, and that his surplus monthly income thereafter will increase to $2,375.21, debtor should have no difficulty replacing, if not exceeding, the $14,158.17 portion of his IRA that he sought to exempt pursuant to § 522(d)(10(E) and to which the chapter 7 trustee has objected. That is to say, debtor will be no worse off in the not-too-distant future and while he is still employed than he will be if the chapter 7 trustee's objection is sustained at this time.   If debtor exercises self-restraint where his discretionary spending is involved, he should be able recoup this amount and have it available for when he finally stops working and retires

We conclude in light of the foregoing that it is far more likely than not that the portion of debtor's IRA he seeks to exempt pursuant to § 522(d)(10(E) is not "reasonably necessary" for the support of debtor and his dependents within the meaning of that provision.  The objection of the chapter 7 trustee to this exemption therefore will be sustained.

Appropriate orders shall issue.


_____
                              **/s/**
                    **BERNARD MARKOVITZ**
                    U.S. Bankruptcy Judge

Date: **March 26, 2007**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | | |
|---|---|---|
| **CYNTHIA A. BENSON,** | : | **Bankruptcy No.  03-34318 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **JAMES R. WALSH, ESQ., TRUSTEE,** | : | |
| | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Related To Doc. Nos. 10, 60,** |
| | : | **and 78** |
| **CYNTHIA A. BENSION** | : | |
| | : | |
| **Respondent** | : | |

**<u>ORDER OF COURT</u>**

     **AND NOW**, this **<u>26th</u>** day of **<u>March</u>**, 2007, for reasons set forth in the accompanying memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that the chapter 7 trustee's objection to debtor Cynthia Benson's exemption of a portion of her IRA in accordance with § 522(d)(10)(E) of the Bankruptcy Code be and hereby is **SUSTAINED**. Said exemption be and hereby is **DISALLOWED**.

     It is **SO ORDERED**.

_____  **/s/**  _____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm: Parties in interest

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | | |
|---|---|---|
| **ALAN DAVID McMURRY,** | : | **Bankruptcy No. 05-29822BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * | : | |
| **JAMES R. WALSH, ESQ., TRUSTEE,** | : | |
| | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Related To Doc. Nos. 12, 22,** |
| | : | **and 36** |
| **ALAN DAVID McMURRY,** | : | |
| | : | |
| **Respondent** | : | |

**ORDER OF COURT**

     **AND NOW**,  this **26th** day of **March**, 2007, for reasons set forth in the above accompanying opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that the chapter 7 trustee's objection to debtor Alan McMurry's exemption of a portion of his IRA in accordance with § 522(d)(10)(E) of the Bankruptcy Code be and hereby is **SUSTAINED**, Said exemption be and hereby is **DISALLOWED**.

     It is **SO ORDERED**.

 

                              **/s/**
                          **BERNARD MARKOVITZ**
                          U.S. Bankruptcy Judge

cm: Parties in interest